United States District Court
Southern District of Texas
**ENTERED**
November 07, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| THE DOW CHEMICAL COMPANY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-2604 |
| | § | |
| BUCHANAN HAULING & RIGGING, | § | |
| INC., | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] are Defendant's Amended Motion for Summary Judgment (Dkt. No. 23) and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment. (Dkt. No. 26.) Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

## I.     BACKGROUND

This is an indemnification action associated with a workplace accident. On November January 16, 2018, John Cola ("Cola") was driving a tractor-trailer for Defendant Buchanan at Plaintiff's Dow's production plant in Freeport, Texas. (Dkt. No. 23 at 3; Dkt. No. 26-4 at 3.)[2]

---

[1] On April 7, 2022, the District Judge referred the entire case to the undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 25.)

[2] In its response, Plaintiff objects to Defendant's undisputed facts and Defendant's exhibits A, E, F, G, H, I. (Dkt. No. 26 at 18–19.) Thus, cites to sources not objected to have also been included to support each point in the factual history.

During his drive through the plant, Cola was hit in a railroad crossing by a train. (Dkt. No. 23 at 3; Dkt. No. 26-10 at 3.) Cola died from his injuries. (Dkt. No. 23 at 3; Dkt. No. 26-10 at 3.) Cola's heirs filed a lawsuit against Dow which settled for an undisclosed amount. (Dkt. No. 1 at 2–3.) Justin Garcia, who was working as a switchman the night of the accident, filed a suit against Buchanan, Dow, and Cola for injuries as a result of the accident. (Dkt. No. 26-5.) As part of settling the *Garcia* suit, Buchanan and Dow agreed that Dow would not seek indemnification from Buchanan for the claim. (*Id.* at 11; Dkt. No. 26-4 at 5; Dkt. No. 26-8.) Therefore, this suit is based on indemnification for the *Cola* lawsuit. (*See* Dkt. No. 1.) On October 25, 2018, Dow demanded Buchanan indemnify it for this suit, and Buchanan refused. (*Id.* at 3.)

In its complaint, Dow acknowledges that Buchanan was providing services under a 2016 North American Transport Agreement ("2016 Transport Agreement"). (Dkt. No. 1 at 2.) This agreement has the following to say about indemnity:

> Except as otherwise expressly provided in this Agreement, each party shall indemnify, defend, and hold the other party, its affiliated entities, and the directors, officers, employees, and agents thereof, harmless from and against any loss, cost, expense, fine, claim, demand, liability suit or action (including reasonable attorneys' fees) arising out of injuries to or the death of any person or persons, including the property of the other, to the extent caused by the negligence of a party in their performance of this Agreement.

(Dkt. No. 23-2 at 24.) This Agreement also includes a section titled "Entire Agreement":

> This Agreement states the entire agreement between the parties and there are no other agreements or understandings whatsoever expressed or implied. In the event of a conflict between one or more provisions of this Agreement and any other documentation such as but not limited to bills of lading, the provisions of this Agreement shall govern.

(Dkt. No. 23-2 at 30.) However, Dow does not claim indemnity under this agreement. Dow instead claims indemnification under a 2015 Hold Harmless-Responsibility-Insurance Contract between the parties ("2015 Hold Harmless Agreement"). (Dkt. No. 1 at 2–4.) This agreement states:

> To the extent permitted by applicable law, CONTRACTOR assumes the entire responsibility and liability for, and SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS the Dow Eligible Recipients from and against, any and all Claims which are made, asserted, or alleged against Dow Eligible Recipients by Contractor Group or which arise in favor of Contractor Group, in connection with Contractor Group's presence on Dow Premises or in connection with Contractor Group Performing Under This Agreement.

(Dkt. No. 23-3 at 2.)

Defendant moved for summary judgment on Plaintiff's indemnity claim and then filed an amended motion for summary judgment. (Dkt. Nos. 6 & 23.) Plaintiff opposes the motion and has filed a cross-motion for partial summary judgment. (Dkt. No. 26.) The Court finds summary judgment in favor of Defendant appropriate.

## II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of identifying the basis for the motion and pointing to materials in the record that demonstrate the absence of a genuine dispute of material fact. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *Celotex Corp.*, 477 U.S. at 322–23; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant satisfies the initial burden, the burden shifts

to the nonmovant to produce evidence of a genuine factual dispute; he cannot merely rely on the pleadings. *Coastal Agric. Supply, Inc.*, 759 F.3d at 505.

In reviewing a motion for summary judgment, the court may not weigh the evidence or make any credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996). However, the court must make reasonable factual inferences in favor of the nonmoving party without accepting "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Baird v. Shagdarsuren*, No. 17-CV-2000, 2020 WL 208815, at *3 (N.D. Tex. Jan. 14, 2020) ("[The nonmoving party's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations omitted). If the movant satisfies his burden and the nonmovant does not, the court must grant summary judgment. *Baird*, 2020 WL 208815, at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994)).

## III.  MERGER

Defendant argues that the 2015 Hold Harmless Agreement, the basis of Plaintiff's suit is inoperative. (Dkt. No. 23 at 12.) In particular, Defendant contends that both the integration clause included in the 2016 Transport Agreement and the inconsistency of the two agreements render the 2015 Hold Harmless Agreement ineffective. (*Id.* at 12–15.) The Court agrees.

### A.  The Integration Clause

Both parties acknowledge that the 2016 Transport Agreement is governed by Michigan law, while the 2015 Hold Harmless Agreement is governed by Texas law. (*Id.* at 12, 15; Dkt. No. 26 at 10.) Both parties also concur that Texas and Michigan law are in agreement on the topic of merger.

(Dkt. No. 23 at 13–14; Dkt. No. 26 at 10.) "When referring to the law of contracts, merger refers to the common law doctrine where courts presume that a prior contract between the same parties and on the same subject will be extinguished in whole or in part by absorption into the new contract." *Van Tol, Magennis & Lang, Inc. v. Woodward*, No. 305313, 2012 WL 4747177, at *2 (Mich. Ct. App. Oct. 4, 2012). "An integration clause is in essence the merger doctrine memorialized." *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App. 1990). "An integration clause, also called a merger clause, determines the applicability of the parol evidence rule to a contract." *Taurus Mold, Inc. v. TRW Auto. US, LLC*, No. 282269, 2009 WL 80974, at *5 (Mich. Ct. App. Jan. 13, 2009). Integration clauses preclude evidence of conflicting prior agreements. *See Smith*, 794 S.W.2d at 827; *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 417 (1998). Further, "[a]n integration clause nullifies all antecedent agreements." *UAW-GM Hum. Res. Ctr*, 579 N.W.2d at 417.

Plaintiff implies that the Entire Agreement provision does not function as an integration clause. (Dkt. No. 26 at 13.) Plaintiff contends that language such as "supersedes" or "cancels all prior agreements" being absent shows that the parties did not intend the clause to function as a merger clause. (*Id.*) This argument holds no merit. The clause, titled "Entire Agreement," holds "This Agreement states the entire agreement between the parties and there are no other agreements or understandings whatsoever express or implied." (Dkt. No. 23-2 at 30.) The phrases "entire agreement" and "there are no other agreements" shows an intent to nullify past agreements. Integration clauses do not need magic language. *See Taurus Mold, Inc.*, 2009 WL 80974, at *5 (quoting Williston on Contracts § 33:21 (4th ed. 2006)) ("Recitations to the effect that a written contract is integrated, that all conditions, promises, or representations are contained in the writing and that the parties are not to be bound except by the writing, are commonly known as

merger or integration clauses."). Further, both Michigan and Texas courts have found valid similarly worded integration clauses where the parties stipulated that the agreement would serve as the "entire agreement," but did not include superseding or cancellation language. *See, e.g.*, *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 746 (E.D. Mich. 2010), *aff'd*, 483 F. App'x 85 (6th Cir. 2012); *Roller v. Chrysler Corp.*, No. 227523, 2002 WL 1921488, at *3 (Mich. Ct. App. Aug. 20, 2002); *Harper v. Welchem, Inc.*, No. C14-91-00627-CV, 1992 WL 198620, at *1 (Tex. App. Aug. 20, 1992), *writ denied* (Jan. 27, 1993). Thus, the clause in question serves as an integration agreement.

For the merger doctrine to be applicable to these clauses, both contracts must be between the same parties, the contracts need to embrace the same subject matter, and the parties must intend merger. *See Smith*, 794 S.W.2d at 828; *Van Tol*, 2012 WL 4747177, at *2. Plaintiff contends that for merger to take place, the contracts must also be inconsistent with each other. (Dkt. No. 26 at 10.) However, when dealing with integration clauses, this is not the case. *See Van Tol*, 2012 WL 4747177, at *2 (explaining that explicit merger clauses are a route to avoid new contracts being upheld only to the extent they are inconsistent). Showing inconsistency is instead another method, outside of integration clauses, to demonstrate merger. *See Archambo v. Laws. Title Ins. Corp.*, 646 N.W.2d 170, 177 n.16 (Mich. 2002) ("We note that it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended."); *Smith*, 794 S.W.2d at 828 ("[I]f the parties to one contract execute another whose terms are so inconsistent with the

first that they both cannot stand, the first agreement is conclusively presumed to have been superseded by the second.").

Plaintiff contends that the 2016 Transport Agreement does not deal with the same subject matter as the 2015 Hold Harmless Agreement. (Dkt. No. 26 at 10–11.) The Court disagrees. Both parties agree that the sixty-seven-page 2016 Transport Agreement is significantly broader than the 2015 four-page Hold Harmless Agreement. (*Id.* at 12; Dkt. No. 27 at 4–5.) As long as a more expansive subsequent agreement still covers topics of a prior narrower agreement, it supersedes. *See Van Tol*, 2012 WL 4747177, at *2 n.2 (quoting 17A CJS, Contracts, § 574, p 467) ("Subsequent agreements may, however, cover additional matters and still replace the former agreements so long as the basic subject matter is the same."); *see also Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 701 (Tex. App. 1993) (finding merger where subsequent agreements covered "not only the subject matter of the [earlier] oral agreement but comprehensively the entire project from beginning through completion and beyond.").

Here, the 2015 Hold Harmless Agreement covers three topics: indemnification, contractor responsibilities, and insurance. (Dkt. No. 23-2.) First, the 2016 Transport Agreement also has an indemnification agreement. (Dkt. No. 23-2 at 24–25; Dkt. No. 23-3 at 2–3.) Second, the 2016 Agreement likewise discusses contractor responsibilities, specifically covering items discussed in the 2015 Hold Harmless Agreement such as independent contractor status, confidentiality, and compliance. (Dkt. No. 23-2 at 18–20, 26, 28; Dkt. No. 23-3 at 3–4.) Third, the 2016 Transport Agreement also covers insurance, discussing the different types of insurance Buchanan must carry. (Dkt. No. 23-2 at 20–22; Dkt. No. 23-3 at 4–5.) Therefore, while the 2016 Transport Agreement covers many more topics than the brief 2015 Hold Harmless Agreement, it fully encompasses all

topics discussed in the 2015 Agreement. Thus, the 2016 embraces the same subject matter as the 2015 agreement.

Plaintiff further argues that the parties did not intend for merger, as the "2015 Hold Harmless agreement . . . expressly contemplates coexistence." (Dkt. No. 26 at 15.) However, the existence of an integration clause conclusively evidences an intent for merger. *See Archambo*, 646 N.W.2d at 177 n.16 ("Therefore, the existence of an integration clause in the later contract necessarily indicates that the parties intended the later contract to supersede the earlier contract, and thus provides dispositive evidence with regard to which contract is controlling."); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 869 (Tex. App. 2006), *supplemented* (Apr. 20, 2006), *review granted, and remanded by agreement* (July 21, 2006) ("[Integration] clauses emphasize the parties' intent to invoke the 'merger doctrine.'").

Moreover, when a contract includes an integration clause, using parole evidence of prior agreements to demonstrate a lack of intent for merger is impermissible. *See UAW-GM Hum. Res. Ctr.*, N.W.2d at 418 ("[W]e hold that when the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face. . . . '"); *ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 720 (Tex. App. 2007) (explaining that integration clauses prohibit the use of extrinsic evidence except to demonstrate fraud, contingencies, or true intent in the case of an ambiguous contract). Thus, the integration clause demonstrates a clear intent for merger. Therefore, the 2016 Transport Agreement extinguishes the 2015 Hold Harmless Agreement because the contracts are between the same parties, embrace the same subject matter, and the integration clause demonstrates an intent for merger.

### B.  Inconsistency

As discussed above, an alternate route to merger without an integration clause is a showing of inconsistency. A subsequent contract between parties that contains terms that are inconsistent with an earlier contract on the same subject matter extinguishes the earlier contract under the merger doctrine. *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (2002) ("When two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement."); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 899 (Tex. App. 1997), *writ denied* (Dec. 11, 1997) ("[W]hen the parties to one contract execute another that has terms so inconsistent with the first that they both cannot stand, courts conclusively presume the first agreement is superseded by the second.").

The provisions in each contract addressing indemnity clearly conflict. Defendant points to their blatant inconsistency by explaining that the 2015 Agreement attempts to hold Buchanan liable for "any and all claims" arising from Buchanan simply being on Dow premises, while the 2016 Agreement limits Buchanan's indemnity obligations to damages arising from Buchanan's own negligence. (Dkt. No. 23 at 14; Dkt. No. 23-3 at 2; Dkt. No. 23-2 at 24.) Regardless of whether Tex. Transp. Code Ann. § 623.0155 would actually allow Dow to require this extensive indemnity, the two contracts memorialize incongruent intents. *Fish*, 948 S.W.2d at 898 ("Whether merger occurs, or whether another agreement is simply supplemental and does not contradict a written contract, is determined from the parties' intent."). Further, the provision in the 2015 Hold Harmless Agreement only requires Defendant to indemnify. (Dkt. No. 23-3 at 2.) In contrast, the 2016 Agreement requires both parties to indemnify the other. (Dkt. No. 23-2 at 24.) Thus, even aside from the integration clause, the 2016 Transport Agreement would still supersede the 2015 Hold Harmless Agreement due to these widely inconsistent terms.

## IV.    TEXAS LAW

Defendant contends that even if the 2015 Hold Harmless Agreement is not merged into the 2016 Agreement, it is still invalid as it violates Texas law. (Dkt. No. 23 at 15.) The relevant law, Tex. Transp. Code Ann. § 623.0155 (West), states:

> (a) A person may not require indemnification from a motor carrier as a condition to:
> (1) the transportation of property for compensation or hire by the carrier;
> (2) entrance on property by the carrier for the purpose of loading, unloading, or transporting property for compensation or hire; or
> (3) a service incidental to an activity described by Subdivision (1) or (2), including storage of property.
> (b) Subsection (a) does not apply to:
> (1) a claim arising from damage or loss from a wrongful or negligent act or omission of the carrier; or
> (2) services or goods other than those described by Subsection (a).
> (c) In this section, "motor carrier" means a common carrier, specialized carrier, or contract carrier that transports property for hire. The term does not include a person who transports property as an incidental activity of a nontransportation business activity regardless of whether the person imposes a separate charge for the transportation.
> (d) A provision that is contrary to Subsection (a) is not enforceable.

Because this Court finds that the 2015 Hold Harmless Agreement has been extinguished by the 2016 Transport Agreement, addressing whether the 2015 Agreement violates § 623.0155 or more particularly analyzing whether the claim arose from negligence on the part of Buchanan are moot issues. Defendant rightly contends that neither in its original complaint nor in its cross-motion for summary judgment does Plaintiff attempt to invoke the 2016 Transport Agreement. (Dkt. No. 27 at 13.) Dow instead only claims indemnification under the 2015 Hold Harmless Agreement. (Dkt. No. 1 at 2–4.) Therefore, the Court will not analyze whether the superseded 2015 Agreement is valid under Texas law.

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendant's Amended Motion for Summary Judgment (Dkt. No. 23) be **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. No. 26) and related claims be **DISMISSED WITH PREJUDICE.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections or responses shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on November 7, 2022.

Sam S. Sheldon
United States Magistrate Judge